TAYLOR BROWN, PLAINTIFF IN ERROR, *v.* LEROY M. WILEY, HUGH R. BANKS, WILLIAM G. LANE, HENRY VAN DERZEE, AND EDWARD H. LANE, MERCHANTS, TRADING UNDER THE NAME AND STYLE OF L. M. WILEY & Co.

Where a bill of exchange was drawn in proper form and protested for non-acceptance, parol evidence of an understanding between the drawer and the party in whose favor the bill was drawn, calculated to vary the terms of the instrument, was not admissible.

THIS case was brought up, by writ of error, from the District Court of the United States for the district of Texas.

Wiley & Co. were citizens of New York, and Brown a citizen of Texas.

The cause of action was the following bill of exchange:

$2,359.26. SHREVEPORT, *March* 23, 1854.

On or before the 1st of May next, 1855, please pay to order L. M. Wiley & Co. twenty-three hundred and fifty-nine and twenty-six one hundredths dollars, for value received, and charge same to my account, without further advice.

TAYLOR BROWN.

*Messrs. Campbell & Strong, merchants, New Orleans.*

By W. L. McMURRAY.

This draft was presented and protested for non-acceptance on the 10th of June, 1854, more than ten months before the time when it was payable; and it appeared from the record that the suit was instituted against the drawer in February, 1855, nearly three months before the maturity of the bill.

The petition, as amended, contained the usual averments of the drawing of the draft, its presentation for acceptance, protest, and notice of dishonor.

The defence was, that there were two bills of similar character, except that one was payable in May, 1854, and the other in May, 1855; and that it was agreed by the parties that the second should not be presented for acceptance until the first was taken up. These pleas were, on motion of the plaintiffs' counsel, stricken out.

The cause then came on for trial, and the defendant offered evidence to prove these facts, the result of which is stated in the following extract from the bill of exceptions:

"The defendant's counsel then offered to prove, that at the time the draft was delivered, it was expressly stipulated and agreed, by and between W. L. McMurray, the agent of the defendant, and Charles Keith, the agent of the plaintiffs, that the said draft should not be presented for acceptance until the defendant should provide for the payment of a previous draft, drawn by the same party, in favor of the same parties, upon the same drawees, falling due in April, 1854, according to an understanding had with the drawees; and that said draft would not have been delivered to plaintiffs' agent, if he had not have agreed to hold it up. This was objected to by plaintiffs' counsel, and the objection sustained; to which ruling and decision of the court the defendant excepts."

The jury found a verdict for the plaintiffs, and the defendant brought the case up to this court.

It was argued by *Mr. Reverdy Johnson* (upon which side there was also a brief by *Mr. Hughes*) for the plaintiff in error, and by *Mr. Larocque* for the defendants.

The following notice of the points made by the counsel for the plaintiff in error is taken from the brief of *Mr. Hughes:*

Is the defence set forth, if true, a good bar of the cause of action of the plaintiffs below?

In regard to this, we think there can be no difficulty. The draft is dated at Shreveport, and the plaintiffs below in their petition state that the draft was drawn "at Shreveport, in the State of Louisiana," upon "Messrs. Campbell & Strong, at the city of New Orleans, in the State of Louisiana." The draft then was a Louisiana contract, and subject to the law of that State in regard to its validity, force, and effect. (Lynch *v.* Postlethwaite, 7 Martin R., 213.)

It is admitted that the general rule of the common law is, that it is not competent by parol evidence to alter, vary, or change a written instrument in its essential terms; and this is believed also to be the rule of the Louisiana law. But this general rule has no application to the agreement set forth in the answer of the defendant in the court below. That agreement did not in any sense propose to alter, vary, or change the written agreement between the parties. As already intimated, though the money mentioned in the draft was not due for a year after date, without some limitation of or restriction upon the rule of the law merchant, if presented for acceptance, and acceptance refused, payment might be enforced by suit, on the cause of action furnished by the refusal to accept, without regard to the time of payment stipulated in the draft. To

prevent this was the object of the agreement attempted to be set up by the amended answer. That agreement contains nothing which is in conflict with the terms of the draft sued on, or, in any sense, attempts to alter, vary, or change the same in an essential part. It does, however, restrain the holder in raising a cause of action by an act to be done by him; which was an act that he might or might not, at his election, perform, and which, of course, it was competent for him, upon sufficient consideration, to agree not to do, and such agreement would be collateral only to the draft.

In a case in Louisiana, it was offered to prove that the defendant's endorsement on the note sued on was merely as security, and that the same was to be paid out of collections to be made of claims due to the drawers. The court said: "We have repeatedly held that the article of our code which provides that parol evidence shall not be received beyond or against the contents of a written act, is inapplicable to a case of this kind. The evidence offered was neither to contradict nor explain a written instrument, but to prove a collateral fact in relation to it." (Dwight *v.* Linton, 3 Rob. La. R., 57.)

And here, the fact was clearly collateral, for the effect of the agreement was a waiver of the right by the payees to demand an acceptance, and of the consequent right to enforce payment by reason of non-acceptance, until it had been ascertained whether a certain act had been performed; but there was no agreement by which the right to sue or recover was denied, after the expiration of twelve months, the time the draft had to run to maturity.

Again: the same court have said that parol evidence is admissible, to prove an agreement between parties, that a bill of exchange, which had been drawn by one of them in favor of the other, should not be negotiated. (Robertson *v.* Nott, 2 Martin, N. S., 122.)

In that case, there was nothing to alter, vary, or change a written instrument, but an agreement to waive a right conferred by law, by reason of the nature of the instrument, within the reason of which this case is clearly embraced; for this, like that case, asks for the admission of evidence to prove a collateral fact, which, so far from contradicting, or altering, or changing a written instrument, proves an agreement cotemporaneously with it, which leaves the written agreement intact, but limits the right which the law gives, by virtue of the draft, of presentment for acceptance at an indefinite period before the maturity of the same.

It cannot be said that no injury is done to the plaintiff in error, and that he has no right to complain by reason of the

violation of the agreement attempted to be set up, in presenting the draft for acceptance before it had been ascertained whether the other draft had been provided for, and suing, as upon a cause of action, for its dishonor by non-acceptance.

The draft sued on, by its terms, was due on the 23d day of March, 1855, and was presented for non-acceptance, and protested on the 10th day of June, 1854; and the other draft was provided for in July, 1854, and the suit was commenced on the 9th day of February, 1855, one month and fourteen days before the draft sued on became due according to its terms, and without any application for acceptance, on or after the time when the first draft was provided for. From this statement, we think sufficient cause of complaint arises. A debt for a large amount is created, and is to be provided for by payment by the defendant to the plaintiff below; two drafts are drawn by the defendants upon their correspondents in New Orleans in favor of the plaintiff below, one having but a short time to run to maturity, and the other at twelve months after date; and at the time, it is agreed by the parties that the latter draft is not to be presented for acceptance until the former is provided for by the drawer, and this agreement is made in consideration of the drawing of the drafts, and concurrent therewith. The short draft is provided for before the other becomes due; and before the maturity of the same, an action is commenced upon a cause of action, by virtue of a protest made in violation of the agreement on the subject. It would be strange, indeed, if no complaint could be made under such circumstances. We think it enough that contracts are performed, or their performance enforced by suit at the time, or after they become due.

Again: it may be attempted to be maintained that the draft, the providing or non-providing for which was to fix and determine the time for the presentment for acceptance of the draft sued on, being due by its terms in May, 1854, and being then, and continuing up to the time of the protest of the draft sued on unprovided for, the time had arrived at which to present the same for acceptance.

But this was not the agreement; no time was specified in which the short draft was to be provided for. We must presume, from the terms used, that this draft had been accepted by the drawers, and that it was paid at maturity; and were the fact not so, something further would have been heard of it. Whether it was provided for in time, so that the drawers and acceptors might not be compelled to pay without funds in the hand of the drawer, was a matter with which the payees had nothing to do; they had no right to complain, if the draft accepted was paid at maturity. The provision for the bill, when

due, was a question between the drawer and his correspondent who had accepted. All that the payees in regard to the draft sued on had to do, was to see that in due time that was done which gave him a right of presentation for acceptance on the draft sued on; and, the act having been performed, then to present his draft for acceptance, and upon refusal, to take such steps as would charge the drawer, or waiting its maturity, to present for payment, and upon refusal, in like manner to charge the drawer by reason of its non-payment. It would be a strange rule, indeed, if the plaintiffs below, having had the full benefit of the agreement attempted to be set up in the acceptance and payment of the first draft, should, in violation of the other part of said agreement, be permitted to maintain a suit, without demanding refusal of acceptance after said first draft was provided for, and before the maturity, by its terms, of the draft sued on; and against this wrong the plaintiff in error thinks he is justified in asking the protection of the court.

Upon the particular point under consideration, *Mr. Larocque* said:

The proof offered by the defendant on the trial was incompetent and inadmissible. It was to prove a parol agreement, made at the time of drawing the draft, and not embodied in it, inconsistent with its terms and legal effect. This would be contrary to the well-settled rule of law on the subject. (Bank of the United States *v.* Dunn, 6 Pet., 51; Bank of Metropolis *v.* Jones, 8 Pet., 12; Rockmore *v.* Davenport, 14 Texas R., 602; Creery *v.* Holly, 14 Wend., 30, per Nelson, J.; Thompson *v.* Ketchum, 8 Johns., 189.)

It is the *lex fori* which governs in this case as to the admissibility of the defence offered by plea, or of evidence to support it. The effort is not to show that by the law of Louisiana the legal import of the bill in question is different from the signification attached to it by the general commercial law, but that an agreement by parol, contrary to that legal import, was made at the same time. (Story's Conflict of Laws, secs. 634, 634 *a,* 635, and cases cited in notes, particularly Yates *v.* Thompson, 3 Clark and Finnell, 577, 580, by Lord Brougham.)

2. The cases cited from Louisiana, of Dwight *v.* Linton, 3 Rob. R., 57, and Robertson *v.* Nott; 2 Mart., N. S., 122, cannot, with great respect to the court which decided them, be sustained.

3. The agreement set up in this case would be void for repugnance and uncertainty. The other draft actually matured May 15. 1854, before the presentment of the one in suit, which was on the 10th of June, 1854; and the theory of the attempted

defence necessarily is, that if the defendant had never chosen to reimburse the drawees the amount of the previous draft, if they had paid it without funds, or never to provide them with funds to pay it, the bill in suit never could be presented, or payment demanded.

1. That the cases of Dwight *v.* Linton, 3 Rob. La. R., 57, and Robertson *v.* Nott, 2 Martin, N. S., 122, have not since been followed, even in Louisiana, but substantially, though tacitly, overruled. (Police Jury *v.* Haw, 2 La. R., 42; Robechot *v.* Folse, 11 ib., 133; Arnous *v.* Davern, 18 ib., 42; Barthete *v.* Estebene, 5 La. Ann. R., 315; Gosserband *v.* Lacour, 8 ib., 75; Williams *v.* Flood, 11 ib., 113.)

2. That it is the *lex fori*, and not the *lex loci contractus*, which governs the question, according to the decisions in Louisiana herself. (Shewell *v.* Raguet, 17 La. R., 457.)

Mr. Justice GRIER delivered the opinion of the court.

Wiley & Co., plaintiffs below, declared on a bill of exchange drawn by Taylor Brown on Messrs. Campbell & Strong, of New Orleans, to order of plaintiff, dated 23d of March, 1854, and payable on the 1st of May, 1855. It was presented for acceptance on the 10th of June, 1854, and was protested for non-acceptance; of which the drawer had due notice.

It is admitted the bill was given for full value; but the defendant set up by way of special plea, and offered to prove to the jury, a parol agreement between him and the plaintiffs, that this bill should not be presented for acceptance till after a certain other draft, payable in May, 1854, was provided for, by placing funds in the hands of the drawees, who had agreed to accept the last bill after funds had been received to meet their acceptance of the first.

It is the rejection of this defence by the court below that is the subject of exception. It presents the question, whether parol evidence should have been received, to vary, alter, or contradict that which appears on the face of the bill of exchange.

When the operation of a contract is clearly settled by general principles of law, it is taken to be the true sense of the contracting parties. This is not only a positive rule of the common law, but it is a general principle in the construction of contracts. Some precedents to the contrary may be found in some of our States, originating in hard cases; but they are generally overruled by the same tribunals from which they emanated, on experience of the evil consequences flowing from a relaxation of the rule. There is no ambiguity arising in this case which needs explanation. By the face of the bill, the owner of it had a right to demand acceptance immediately, and

to protest it for non-acceptance. The proof of a parol contract, that it should not be presentable till a distant, uncertain, or undefined period, tended to alter and vary, in a very material degree, its operation and effect. (See Thompson *v.* Ketchum, 8 John., 192.)

Any number of conflicting cases on this subject might be cited. It will be sufficient to refer to the decisions of this court, those of Texas, where the suit was brought, and of Louisiana, where the contract was made.

In the Bank of United States *v.* Dunn, (6 Peters, 56,) this court have declared " that there is no rule better settled or more salutary in its application than that which precludes the admission of parol evidence to contradict or substantially vary the legal import of a written agreement." The case of Brochmore *v.* Davenport, 14 Texas Rep., 602, a case precisely similar to the present, adopts the same rule. The case of Robishat *v.* Folse, 11 Louisiana, and of Barthet *v.* Estebene, 5 Ann. Rep., 315, and several others, acknowledge the same doctrine, thereby overruling some early cases in Louisiana which had departed from it.

This being the only point urged by plaintiff in error as a ground of reversal, the judgment of the court below is affirmed.